FILED

JAN 2 8 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN OTTERSON,

        Plaintiff,

                                    CV 07-1274-PK

                                    FINDINGS AND
v.                                 RECOMMENDATION

FEDERAL EXPRESS CORPORATION,
KINKO'S, INC., FEDEX KINKO'S OFFICE
AND PRINT SERVICES, INC., and DOES 3-
10;

        Defendants.

PAPAK, Magistrate Judge:

      This action was filed on August 1, 2007, by plaintiff Kevin Otterson in the Circuit Court

of the State of Oregon, County of Multnomah, alleging a single claim of conversion against

defendant Federal Express Corporation ("FedEx") and ten Doe defendants. On August 23, 2007,

the action was removed to this court. Subsequently, on May 19, 2008, Otterson amended his

Page 1 - FINDINGS AND RECOMMENDATION

complaint to state the conversion claim against FedEx, two corporate entities respectively

identified as Kinko's, Inc., and Fedex Kinko's Office and Print Services, Inc. (collectively,

"Kinko's"[1]), and eight Doe defendants, as well as a claim styled as a breach of bailment alleged

only against Kinko's. This court has federal question and supplemental jurisdiction over

Otterson's claims pursuant to 28 U.S.C. §§ 1331 and 1367 (as discussed in greater detail below).

Now before the court are the motion for summary judgment (#32) filed by defendants

FedEx and Kinko's and the motion for summary judgment (#44) filed by plaintiff Otterson. I

have considered the parties' motions, oral argument on behalf of the parties, and all of the

pleadings on file. For the reasons set forth below, the defendants' motion should be granted and

Otterson's motion should be denied.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues

exist for trial. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995), *cert. denied*, 116 S.Ct. 1261 (1996). The substantive law governing a claim or defense

---

[1] The entities "Kinko's, Inc.," and "Fedex Kinko's Office and Print Services, Inc.,"
apparently do not now exist, although they may at one time have done so; the parties appear to
agree that the veridical entity corresponding to these incorrect names is FedEx Office and Print
Services, Inc. FedEx Office and Print Services, Inc., referred to herein as "Kinko's" (a name
associated with a corporate predecessor of the current entity), appears to have consented to
service and to this court's jurisdiction under the incorrect names listed in Otterson's amended
complaint.

determines whether a fact is material. *See Miller v. Glenn Miller Prod., Inc.,* 454 F.3d 975, 987 (9th Cir. 2006).

In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000). On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the non-moving party. *See* Fed. R. Civ. P. 56; *see also, e.g., Fair Housing Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir. 2001). Summary judgment, of course, may not be granted where the court finds unresolved issues of material fact, even in situations where the cross motions allege that no disputed facts exist. *See id.*

## FACTUAL BACKGROUND

On March 9, 2007, plaintiff Otterson sent an email with the subject line "Hi Matt.." to a recipient identified as Matthew Bain of Miami Beach, FL, as follows:

> Looking to sell off a few of my pieces, do you have any interest in this?
> [Attachment omitted.]
> The dial is mint, and comes with Rolex service papers.
>
> Asking $60K, there is none nicer.

A little over half an hour later, Otterson received the following reply from Bain's email address:

> I will buy it...
>
> Thanks

Page 3 - FINDINGS AND RECOMMENDATION

(Ellipsis original.)  Within the next half hour, Otterson replied, "OK, I'll Fedex it Monday for Tuesday delivery.  If everything looks OK just pop me a check in the mail."

On March 13, 2007, Otterson shipped a package to Bain's address via FedEx, from the Kinko's outlet at SW 2nd and Alder in Portland, OR.  It may reasonably be inferred from Otterson's sworn declaration, and defendants do not deny for purposes of the motions now before the court, that the package contained the Rolex watch that Bain had agreed to purchase.  On the FedEx airbill, Otterson listed the shipper as "Kevin Otterson; KWP, Inc.; 8260 E. Raintree Drive, Suite 108; Scottsdale, Arizona," and declared the value of the package's contents as equal to "$0.00."

The FedEx airbill, together with the FedEx Service Guide therein incorporated by reference, constitute the applicable contract of carriage.  The airbill states, in relevant part, that FedEx's "liability is limited to $100 unless [the shipper] declare[s] a higher value," and directs customers to "[s]ee the current FedEx Service Guide for details."  The airbill further states, in relevant part, that FedEx's

> liability in connection with [a] shipment is limited to the lesser of [a shipper's] actual damages or $100, unless [the shipper] declare[s] a higher value, pay[s] an additional charge, and document[s] [his] actual loss in a timely manner.  [The shipper] may pay an additional charge for each $100 of declared value.  The declared value does not constitute, nor do[es] [FedEx] provide, cargo liability insurance.

The applicable FedEx Service Guide similarly states that:

> A.    The declared value of any package represents our maximum liability in connection with a shipment of that package, including, but not limited to, any loss, damage, delay, misdelivery, nondelivery, misinformation, any failure to provide information, or misdelivery of information relating to the shipment.  It is the shipper's responsibility to prove actual damages.  Exposure to and risk of any loss in excess of the declared value is assumed

by the shipper.  [The shipper] may transfer this risk to an insurance carrier of [the shipper's] choice through the purchase of an insurance policy. Contact an insurance agent or broker if you desire insurance coverage. WE DO NOT PROVIDE INSURANCE COVERAGE OF ANY KIND.

B. With respect to U.S. express package services, unless a higher value is declared and paid for, our liability for each package is limited to US$100. For each package exceeding US$100 in declared value, an additional amount will be charged.  See Rates in the FedEx Service Guide for details.

\* \* \*

F. Shipments (packages or freight) containing all or part of the following items are limited to a maximum declared value of US$500:

 \* \* \*

7. Jewelry, including but not limited to, . . . watches and their parts. . . .

When the package arrived in Miami, FedEx discovered that the shipment container showed signs of having been tampered with, and that it contained an empty Rolex box only. FedEx tendered a check for $100 to Otterson to cover its liability for his alleged loss.  Otterson declined to cash the check.

This action followed.

## ANALYSIS

Otterson alleges that all defendants – necessarily including the anonymous Doe defendants – are liable for conversion of the contents of the package shipped to Miami Beach, either directly or vicariously, pursuant to the doctrine of *respondeat superior*.  Otterson further alleges that defendant Kinko's is directly liable for breach of bailment.  For their part, defendants assert that Otterson's state-law claims are preempted by the federal Airline Deregulation Act, and moreover that Otterson's damages are contractually limited to the $100 already tendered to him.

Page 5 - FINDINGS AND RECOMMENDATION

The Airline Deregulation Act of 1978 (the "Act") contains an express preemption clause providing, in relevant part, that:

> a State. . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . when such carrier is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement).

49 U.S.C. § 41713(b)(4)(A).  In addition, the Act contains a savings clause providing that "[a] remedy under [the Act] is in addition to any other remedies provided by law."  49 U.S.C. § 40120(c).

In 1995, the United States Supreme Court construed the Act's preemption clause as follows:

> The [Act]'s preemption clause. . . stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated.  This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Am. Airlines v. Wolens*, 513 U.S. 219, 232-233 (1995) (footnote omitted); *see also id.* at 222 ("the ADA's preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves").  The *Wolens* court held that the Act's preemption clause did not permit parties to bring civil actions against air carriers based on state laws directly or indirectly regulating carrier behavior relating to the pricing of carrier services, but made clear that actions seeking enforcement of contractual commitments voluntarily entered into by carriers could go forward.  *See id.* at 226-228, 228-233.

Subsequently, in 1997, the Fifth Circuit decided *Sam L. Majors Jewelers v. ABX, Inc.*,

117 F.3d 922 (5th Cir. 1997), in which the Act was determined to preempt state law claims for

deceptive business practices, and in which liability-limiting language included in a carrier's

airbill was held enforceable against a shipper. The *Majors* plaintiff had shipped three packages

containing jewelry (including a gold Rolex watch) via an interstate carrier, and the packages

failed to arrive at their destination. *See Majors*, 117 F.3d at 923-924. The carrier's airbill

contained language excluding all liability for lost shipments containing jewelry of any kind. *See

id.* at 924. The shipper plaintiff sued the carrier defendant in a Texas state court, alleging breach

of contract, negligence, and violation of Texas deceptive business practices law; the defendant

removed the action to federal court, where it prevailed on summary judgment. *See id.*

The *Majors* court found that, under *Wolens*, the plaintiff's state-law deceptive business

practices claims were clearly preempted. *See id.* at 931. In addition, the court held that the

defendant carrier's airbill constituted a carriage contract, *see id.* at 930, that carriers are permitted

under federal common law to limit their liability within a carriage contract, *see id.; see also

Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1364-1365 (9th Cir. 1987) (holding under the

federal common law that an airline passenger was bound by a clause limiting carrier liability for

lost or damaged baggage, regardless of whether the passenger had actual notice of the clause),

and that therefore the carrier defendant's liability had effectively been eliminated and the plaintiff

could make no recovery for its loss, *see id.* at 930-931.

In 1999, the Ninth Circuit expressly "agree[d] with the Fifth Circuit that federal common

law applies to loss of or damage to goods by interstate common carriers by air," *Read-Rite Corp.

v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1195 (9th Cir. 1999), *citing Deiro*, 816 F.2d at

1365; *also referencing Majors*, 117 F.3d at 928, and further expressly "agree[d] with the Fifth

Page 7 - FINDINGS AND RECOMMENDATION

Circuit that state law regulating the scope of air carrier liability for loss or damage to cargo is preempted by the [Act]." *Read-Rite*, 186 F.3d at 1197, *citing Majors*, 117 F.3d at 929 n.15, 931; *also citing Deiro*, 816 F.2d at 1365. The *Read-Rite* court additionally affirmed that the application of state contract law to routine breach-of-contract claims was not preempted by the Act, *see id.*

The *Read-Rite* court explained that, under the federal common law of the Ninth Circuit – as distinct from the common law of the Fifth Circuit articulated by the *Majors* court – provisions limiting an air carrier's liability for lost or damaged goods are "*prima facie* valid [only] if the face of the contract (or, in this case, air waybill) recites the liability limitation and 'the means to avoid it.'" *Id.* at 1198, *quoting Royal Insurance Co. v. Sea-Land Service Inc.*, 50 F.3d 723, 727 (9th Cir. 1995). "The burden then shifts to the shipper to prove that it did not have a 'fair opportunity' to purchase greater liability coverage." *Id.*, *quoting Royal Insurance*, 50 F.3d at 727. The *Read-Rite* court affirmed the decision of the district court below, granting summary judgment to enforce liability-limiting provisions contained within the carrier defendants' airbills, *see id.* at 1199, and affirmed the court's decision to award damages strictly based on the liability scheme set forth in those airbills, *see id.*

I.    **Subject-Matter Jurisdiction**

Here, the issue to be first determined is whether this court has subject matter jurisdiction over the plaintiff's claims. The amount in controversy, $60,000, is insufficient to invoke diversity jurisdiction, so Otterson's amended complaint must be analyzed to determine whether it gives rise to federal question jurisdiction.

On its face, Otterson's amended complaint articulates precisely two claims, each

expressly stating a cause of action under the common law of the State of Oregon.  "In general, district courts have federal-question jurisdiction only if a federal question appears on the *face* of a plaintiff's complaint." *Brennan v. Southwest Airlines Co.*, 134 F.3d 1405 (9th Cir. 1998) (emphasis original), *citing Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

However, the so-called "artful pleading doctrine" provides an exception to this general rule:

> Under the artful pleading doctrine, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.* [*v. Constr. Laborers Vacation Trust*], 463 U.S. [1], 22 [(1983)]; *see also Sparta* [*Surgical Corp. v. NASD*], 159 F.3d [1209,] 1212 [(9th Cir. 1998)] ("A plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state terms a claim that can be made only under federal law.").  **The artful pleading doctrine allows courts to "delve beyond the face of the state court complaint and find federal question jurisdiction" by "recharacterizing a plaintiff's state-law claim as a federal claim."** *Precision Pay Phones v. Qwest Communs. Corp.*, 210 F. Supp. 2d 1106, 1112, 1113 (N.D. Cal. 2002) (*citing Hunter v. United Van Lines*, 746 F.2d 635, 640 (9th Cir. 1985)).
>
> Courts should "invoke the doctrine 'only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results.'" *Sullivan* [*v. First Affiliated Secur., Inc.*], 813 F.2d [1368,] 1373 [(9th Cir. 1987)] (*quoting Salveson v. W. States Bankcard*, 731 F.2d 1423, 1427 (9th Cir. 1984)).  While the artful pleading doctrine is a useful procedural sieve to detect traces of federal subject matter jurisdiction in a particular case, it also has substantive implications on the scope of federal jurisdiction and efficiency.  *See generally* Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition*, 76 Tex. L. Rev. 1781 (1988) (discussing the history of artful pleading doctrine and the implications of doctrinal expansion on federal jurisdiction).

*Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (emphasis supplied).

The *Lippitt* court explained that the doctrine permits federal courts to assert federal question over ostensible state-law claims in two sets of circumstances:  complete preemption cases and substantial federal question cases:

> Since its first articulation in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S.

667, 673, 94 L. Ed. 1194, 70 S. Ct. 876 (1950), courts have used the artful pleading doctrine in: (1) complete preemption cases, *see Metropolitan Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-65, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987) and (2) substantial federal question cases, *see Franchise Tax Bd.*, 463 U.S. at 27-28. Subsumed within this second category are those cases where the claim is necessarily federal in character, *see Brennan v. Southwest Airlines Co.*, 134 F.3d 1405 at 1409, or where the right to relief depends on the resolution of a substantial, disputed federal question, *see Merrell Dow [Pharmaceuticals, Inc. v. Thompson]*, 478 U.S. [804,] 814 (1986).

*Id.* at 1041-1042 (footnote omitted).

It is clear that, here, the Act does not completely preempt state-court jurisdiction over all claims relating to the Act's subject matter:

Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services. The A[ct] contains no hint of such a role for the federal courts. In this regard, the A[ct] contrasts markedly with the ERISA, which does channel civil actions into federal courts, *see* ERISA §§ 502(a), (e), 29 U.S.C. §§ 1132(a), (e), under a comprehensive scheme, detailed in the legislation, designed to promote "prompt and fair claims settlement." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987); *see Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143-145, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990) (finding ERISA's comprehensive civil enforcement scheme a "special feature" supporting preemption of common-law wrongful discharge claims).

*Wolens*, 513 U.S. at 232. Subject matter jurisdiction therefore attaches only to the extent that Otterson's claims necessarily raise a substantial federal question.

The *Lippitt* court usefully set out the parameters of the substantial federal question analysis:

A state law claim falls within th[e substantial federal question] category when: (1) "a substantial, disputed question of federal law is a *necessary* element of . . . the well-pleaded state claim," *Rains [v. Criterion Sys.]*, 80 F.3d [339,] 345 (9th Cir. 1996) (internal citation omitted) (emphasis in original) or the claim is an "inherently federal claim" articulated in state-law terms, *Brennan*, 134 F.3d at 1409; or (2) "the right to relief depends on the resolution of a substantial, disputed

federal question," *ARCO Envtl. Remediation, L.L.C. v. Department of Health & Envtl. Quality*, 213 F.3d 1108, 1114 (internal citation omitted). **A careful reading of artful pleading cases shows that no specific recipe exists for a court to alchemize a state claim into a federal claim -- a court must look at a complex group of factors in any particular case to decide whether a state claim actually "arises" under federal law.**

*Id.* at 1042-1043 (italicized emphasis original; bolded emphasis supplied); *see also Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.*, 348 U.S. 437, 450 (1955) ("Although it has sometimes been suggested that the 'cause of action' must derive from federal law, it has been found sufficient that some aspect of federal law is essential to plaintiff's success. The litigation provoking problem has been the degree to which federal law must be in the forefront of the case and not be remote, collateral or peripheral.") (footnoted citations omitted).

The Ninth Circuit has observed that "[a] traditional example of the artful pleading doctrine is one in which the defendant has a federal preemption defense to a state claim and federal law provides a remedy." *Brennan*, 134 F.3d at 1409 (internal quotation marks omitted), *quoting Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 13712 (9th Cir. 1987). The *Brennan* court analyzed state law causes of action for unlawful business practices and breach of contract, determined that they were preempted by the Internal Revenue Code, but determined that, because the IRC provided a cause of action for seeking tax refunds, and the claims were effectively the equivalent of suits for tax refunds, the claims were inherently federal. *See id.* at 1409-1412.

Here, as in *Brennan*, the defendants have asserted a clear federal preemption defense. Moreover, also as in *Brennan*, it is clear that federal law, in this case the federal common law, provides a remedy for the plaintiff's alleged harm. *See, e.g., Read-Rite Corp. v. Burlington Air*

*Express, Ltd.*, 186 F.3d 1190, 1195 (9th Cir. 1999) ("federal common law applies to loss of or damage to goods by interstate common carriers by air"), *citing Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1365 (9th Cir. 1987); *see also* 49 U.S.C. § 40120(c) (expressly preserving remedies available at the federal common law).  Because Otterson seeks a remedy for the loss of goods shipped via an interstate air carrier, and because the only remedy available for such loss is under the federal common law, under *Brennan* Otterson's claims are best construed as inherently federal, giving rise to federal question jurisdiction pursuant to the artful pleading doctrine.  *See Brennan*, 134 F.3d at 1409, 1409-1412; *see also Majors*, 117 F.3d at 925-929 (construing a state-law negligence claim as a federal common law claim for loss of or damage to goods shipped by air carrier).  Because Otterson's complaint contains at least one inherently federal claim, this court has federal question jurisdiction over that claim.  *See* 28 U.S.C. § 1331.  Because Otterson's claims are, collectively, sufficiently related to form part of the same case or controversy, this court should assert supplemental jurisdiction over the state-law claims articulated in the amended complaint.  *See* 28 U.S.C. § 1367.

## II.    Preemption Under the Act

Although Otterson's complaint is best construed as stating an inherently federal claim for loss of or damage to goods shipped by interstate air carrier, *see supra*, it is perhaps most equitable to interpret the complaint as additionally stating both of the two state-law claims it expressly articulates.  I therefore consider the effect of the Act's preemption provision on both the claim for conversion and the claim for breach of bailment.

### A.    Conversion

Otterson's amended complaint states a cause of action for conversion against FedEx,

Kinko's, and eight individual Doe defendants. Under the unambiguous language of the Act's preemption clause and the clear holdings of *Wolens, Read-Rite*, and *Majors*, Otterson's state-law causes of action against FedEx and Kinko's, other than "routine" breach of contract claims, cannot go forward in this or any other court.[2] *See* 49 U.S.C. § 41713(b)(4)(A); *Wolens*, 513 U.S. at 222, 232-233; *Read-Rite*, 186 F.3d at 1195, 1197; *Majors*, 117 F.3d at 930-931.

Otterson argues that his conversion claim may be construed as a species of breach of contract claim, and therefore should survive preemption. I do not find support for Otterson's argument in Oregon law. Although Otterson could have elected to plead a claim for routine breach of contract, he did not do so in his complaint as originally filed or as amended. To the contrary, Otterson's conversion claim against FedEx and Kinko's, as pled, sounds in tort, and is therefore subject to preemption under the Act.

However, the same conclusion does not apply to Otterson's conversion claim as pled against the individual Doe defendants. To the extent Otterson alleges that any individual Doe defendant converted the contents of the FedEx package for his or her own personal gain, a claim seeking to establish such defendant's direct liability for such conversion would not in any material way "relate[] to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(4)(A). Because the claim alleging the Doe defendants' direct liability for conversion is not within the scope of the Act's preemption provision, the conversion claim should survive federal preemption

---

[2] This conclusion applies with equal force whether the claim is articulated against FedEx or against Kinko's. Preemption is applicable to claims "related to a price, route, or service of an air carrier" regardless of whether the defendant is actually a carrier itself. 49 U.S.C. § 41713(b)(4)(A); *see also, e.g., Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 287 (5th Cir. 2002) ("ADA preemption is not limited to claims brought directly against air carriers. . . . Rather, claims are preempted if they 'relate to' the prices, routes or services of an air carrier") (citations omitted).

Page 13 - FINDINGS AND RECOMMENDATION

to the sole extent alleged against the Doe defendants.

Recognizing the inapplicability of the preemption doctrine to the claims against the Doe defendants, some or all of whom are alleged to be employees of either FedEx or Kinko's, Otterson argues that the named defendants are vicariously liable for their employees' tort under Oregon's *respondeat superior* doctrine. According to Oregon law:

> Under the doctrine of *respondeat superior*, an employer is liable for an employee's torts when the employee acts within the scope of employment. Negligence or other tortious conduct by the employer is not required. . . .
>
> Three requirements must be met to conclude that an employee was acting within the scope of employment. These requirements traditionally have been stated as: (1) whether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform.

*Chesterman v. Barmon*, 305 Or. 439, 442 (1988) (citations omitted). Here, the record contains no evidence from which a trier of fact could reasonably conclude that a FedEx or Kinko's employee was either hired for the purpose of converting FedEx customers' property or converted Otterson's watch while motivated, even in part, by a purpose of serving his or her employer. As a matter of law, Otterson's entirely speculative vicarious liability argument therefore fails.

For the foregoing reasons, Otterson's conversion claim should be found preempted as to defendants FedEx and Kinko's, but survive preemption to the extent pled against the Doe defendants. The claim should therefore be dismissed to the extent pled against FedEx and Kinko's.

## B.    Breach of Bailment

Otterson's complaint states a claim for breach of bailment against defendant Kinko's only.

Page 14 - FINDINGS AND RECOMMENDATION

Under Oregon law, the creation of a bailment requires "a delivery of something of a personal nature by one party (bailor) to another (bailee), to be held according to the purpose or object of the delivery, and to be returned or delivered over when that purpose is accomplished." *Gage v. All Nations Ins. Co.*, 314 Or. 700, 705 (1992), *citing Kantola v. Lovell Auto Co.*, 157 Or. 534, 538 (1937). A bailee is under a duty owed to the bailor to return the goods entrusted in good condition. *See, e.g., National Fire Ins. Co. v. Mogan*, 186 Or. 285, 290 (1949).

Oregon law clearly recognizes a cause of action for breach of a *contract* of bailment; for such a cause of action, the law of contract and all normal contractual remedies apply. *See, e.g., Diamond Roller Mills v. Moody*, 63 Or. 90, 100 (1912). In addition, Oregon law recognizes a cause of action for *negligent performance* of a bailee's duties, for which the law of negligence, sounding in tort, is applicable. *See, e.g., National Fire*, 186 Or. at 290. Where goods entrusted to a bailee are lost or damaged, a bailor may elect between maintaining a breach of contract action or maintaining an action in tort for negligent performance of the bailee's duty of care. *See, e.g., Shepherd v. Hub Lumber Co.*, 273 Or. 331, 342 (1975), *quoting National Fire*, 186 Or. at 290.

Analysis of the amended complaint in this action strongly suggests that Otterson intends his action to sound in tort, for negligent performance of Kinko's duties as bailee. *See, e.g.*, First Amended Complaint. ¶ 17 ("Defendant Kinko's breached the duty it owed to plaintiff by not delivering the watch to Defendant Fed[Ex] for shipping"). Because the breach of bailment cause of action is best construed as a tort claim, it is clearly preempted and should be dismissed. *See* 49 U.S.C. § 41713(b)(4)(A); *Wolens*, 513 U.S. at 222, 232-233; *Read-Rite*, 186 F.3d at 1195, 1197; *Majors*, 117 F.3d at 930-931.

### III.    Federal Common Law Claim

As noted above, Otterson's amended complaint should be construed as stating a federal common law claim for loss of goods shipped by air carrier, in this case by defendant FedEx. Under the federal common law, the provisions of the FedEx airbill and FedEx Service Guide constitute the applicable contract of carriage. Those documents contain express limitations on liability which purport to limit the carrier's liability for the loss of goods without higher declared value to $100. That amount has already been tendered to Otterson.

Under the federal common law of the Ninth Circuit, contractual provisions limiting an air carrier's liability for lost or damaged goods are "*prima facie* valid if the face of the contract (or, in this case, air waybill) recites the liability limitation and 'the means to avoid it.'" *Read-Rite*, 186 F.3d at 1198, *quoting Royal Insurance*, 50 F.3d at 727 (9th Cir. 1995). "The burden then shifts to the shipper to prove that it did not have a 'fair opportunity' to purchase greater liability coverage." *Id.*, *quoting Royal Insurance*, 50 F.3d at 727. Here, the airbill clearly states the liability limitation and sets forth the ways in which it can be avoided: either by declaring a value higher than $100 and paying a correspondingly higher amount for shipping the goods, or, in the event (as here) that the terms of the contract do not permit declaration of a sufficiently high value, by purchasing third-party insurance. There is no evidence in the record to support the conclusion that Otterson lacked a fair opportunity to purchase adequate liability coverage. The liability-limiting provisions are therefore enforceable as a matter of law.

Otterson nevertheless argues that applicable law does not permit FedEx and Kinko's to contractually limit their own liability where, as here, it is alleged that goods shipped by an interstate air carrier may have been converted by an employee of the carrier. In fact, the federal

common law recognizes the "true conversion" doctrine, pursuant to which a carrier will not be permitted to limit liability for its own conversion of shipped goods. *See, e.g., Glickfeld v. Howard Van Lines, Inc.*, 213 F.2d 723, 727 (9th Cir. 1954) ("if the property has been converted by the carrier, it would be against public policy to permit the carrier to limit its liability and thus to profit from its own misconduct"). "However, the cases are uniform in holding that the conversion doctrine is pertinent only when there has been a true conversion, *i.e.*, where the carrier has appropriated the property for its own use or gain. The carrier may properly limit its liability where the conversion is by third parties *or even by its own employees*." *Id.* (emphasis supplied; footnoted citations omitted). The *Glickfeld* court reasoned that "[i]n the latter circumstance, while the carrier may have been guilty of negligence in the selection of its employees, it has not been unjustly enriched, nor has it been guilty of any misconduct." *Id.* Here, however, the record contains no evidence from which a trier of fact could reasonably conclude that FedEx or Kinko's appropriated Otterson's Rolex and added its value to its asset sheets. The true conversion doctrine is therefore inapplicable here as a matter of law.

In consequence, Otterson is limited as a matter of law to a maximum recovery of $100 on his federal common law claim. As defendants have already tendered that amount, such claim should be dismissed as moot.

## IV.    Remaining State-Law Claims

As noted above, Otterson's state-law claims against defendants FedEx and Kinko's are clearly preempted by the Act, and any federal common law claim arising out of Otterson's complaint is subject to an enforceable liability-limiting provision, and should be dismissed as moot. The only remaining cause of action is the conversion claim, to the sole extent it is alleged

Page 17 - FINDINGS AND RECOMMENDATION

against the individual Doe defendants. Because the conversion claim against the Doe defendants is a pure creature of state law and raises no federal question, and because this court lacks diversity jurisdiction over Otterson's claims, this court's jurisdiction over the remaining claim is supplemental, pursuant to 28 U.S.C. § 1367.

Section 1367 provides, in relevant part, that:

The district courts may decline to exercise supplemental jurisdiction over a claim . . . if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Here, all claims over which this court had original jurisdiction should be dismissed. In consequence, the court has authority pursuant to Section 1367(c)(3) to decline to exercise supplemental jurisdiction over the remaining state-law claim. However, as the Ninth Circuit has stated, "actually exercising discretion and deciding whether to decline, or to retain, supplemental jurisdiction over state law claims when any factor in subdivision (c) is implicated is a responsibility that district courts are duty-bound to take seriously." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (*en banc*). After determining that authority exists to decline supplemental jurisdiction under Section 1367(c), the district courts of the Ninth Circuit are directed to consider whether the exercise of jurisdiction would advance the values "of economy, convenience, fairness, and comity." *Id.* (citation omitted).

The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). Otterson's claim does not present circumstances that take it outside the norm. Requiring Otterson to pursue his sole surviving claim in state court would not create multiple parallel proceedings, and thus would neither impair judicial economy nor cause inconvenience or unfairness. Moreover, it is beyond dispute that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (footnote omitted). The court should therefore decline to exercise supplemental jurisdiction over Otterson's remaining state-law claim, which should be remanded for further proceedings in state court. *See* 28 U.S.C. § 1367(c)(3); *Acri*, 114 F.3d at 1001; *Cohill*, 484 U.S. at 350 n. 7.

## CONCLUSION

For the reasons set forth above, I recommend that the motion for summary judgment (#32) filed by defendants FedEx and Kinko's be granted, and the motion for summary judgment (#44) filed by plaintiff Otterson be denied. Otterson's implied federal common law cause of action for loss of goods shipped by interstate carrier should be dismissed as moot, and his express state-law claims for conversion and for negligent performance of bailment duties should be dismissed as preempted by federal law, to the extent pled against the named defendants in this action. The conversion claim pled against the Doe defendants should be remanded to the Circuit Court of the State of Oregon, County of Multnomah, for further proceedings.

Page 19 - FINDINGS AND RECOMMENDATION

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due February 11, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.


Dated this 28th day of January, 2009.

Honorable Paul Papak
United States Magistrate Judge